# EXHIBIT A

Cause No. 13-DCV-204362

***Arthur B. Brazil, II and Lorraine S. Brazil vs. Bank of America, N.A.***

In the 434th Judicial District Court of Fort Bend County, Texas

## INDEX OF STATE COURT FILE DOCUMENTS

1.   02/13/2013   Docket Sheet

2.   02/13/2013   Plaintiff Original Petition and Request for Disclosures

3.   02/13/2013   Case Information Sheet

4.   03/20/2013   Defendant's Answer

438670.1

Logout My Account Search Menu New Civil Search Refine Search Back          Location : Fort Bend   Images Help

# REGISTER OF ACTIONS
## CASE NO. 13-DCV-204362

Arthur B Brazil, II & Lorraine S Brazil vs Bank of America, N.A.

§
§
§
§
§
§

Case Type: **Contract - Consumer/Commercial/Debt**
Date Filed: **02/20/2013**
Location: **434th District Court**

---

### PARTY INFORMATION

|  |  | Attorneys |
|---|---|---|
| **Defendant or Respondent** | **Bank of America, N.A.** Dallas, TX 75201 |  |
| **Plaintiff or Petitioner** | **Brazil, Arthur B, II** Missouri City, TX 77459-6279 | **Robert C. Lane** *Retained* 713-595-8202(W) |
| **Plaintiff or Petitioner** | **Brazil, Lorraine S** | **Robert C. Lane** *Retained* 713-595-8202(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 02/20/2013 | **Original Petition**      Doc ID# 1 *Original Petition And Request For Discovery* |
| 02/20/2013 | **Docket Sheet** *Docket Sheet* |
| 02/20/2013 | **Case Information Sheet** *Civil Case Information Sheet* |
| 02/20/2013 | **Letters** *E-Filing Cover Letter* |
| 02/20/2013 | **Issuance**      Doc ID# 2 *Citation To: Bank Of America NA* |
| 02/20/2013 | **Letters** *Attachment Letter* |
| 02/21/2013 | **Citation** *Held For Pickup*      Bank of America, N.A.      Unserved |

---

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| **Plaintiff or Petitioner** Brazil, Arthur B, II | | |
| Total Financial Assessment | | 328.00 |
| Total Payments and Credits | | 328.00 |
| **Balance Due as of 03/07/2013** | | **0.00** |
| 02/21/2013 | Transaction Assessment | 257.00 |
| 02/20/2013 | Transaction Assessment | 71.00 |
| 02/21/2013 | E-filing      Receipt # 2013-06077-DCLK      Lane, Robert C. | (328.00) |



DOCKET

13-DCV-204362
DI/DIV
Docket Sheet
2323664

| COURT NO. | STYLE OF CASE | ATTORNEYS | TYPE OR ACTION | CAUSE NO. 13-DCV-204362 |
|---|---|---|---|---|

**434TH JUDICIAL DISTRICT COURT**

ARTHUR B BRAZIL, II & LORRAINE S BRAZIL VS BANK OF AMERICA, N.A.

ROBERT C. LANE

MIDDAGH & LANE PLLC
6200 SAVOY DR SUITE 1150
HOUSTON TX 77036

713-595-8202

**Contract -**
Consumer/Commercial/Debt

| | DATE OF FILING | | |
|---|---|---|---|
| MONTH | DAY | YEAR | |
| 02/20/2013 | | | |

STENOGRAPHER USED?

| YES | NO |
|---|---|

| DATE OF ORDERS | | |
|---|---|---|
| MONTH | DAY | YEAR |

ORDERS OF COURT

JURY FEE:

PAID BY:



CAUSE NO. 13-DCV-204362
ARTHUR B BRAZIL, II & LORRAINE S BRAZIL VS BANK OF AMERICA, N.A.

| DATE OF ORDERS | | |
|---|---|---|
| MONTH | DAY | YEAR |
| | | |

13 – DCV – 204362
ORPE
Original Petition
2323912

Filed
13 February 20 P4:16
Annie Rebecca Elliott
District Clerk
Fort Bend District

NO. _____  13 DCV·204362

| | | |
|---|---|---|
| ARTHUR B. BRAZIL, II & | § | IN THE DISTRICT COURT OF |
| LORRAINE S. BRAZIL, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **FORT BEND COUNTY, TEXAS** |
| v. | § | |
| | § | |
| BANK OF AMERICA, N.A. | § | **434** |
| | § | |
| **Defendant.** | § | **JUDICIAL DISTRICT** |

## ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Arthur B. Brazil, II and Lorraine S. Brazil ("Brazils" or "Plaintiffs"), and files this Original Petition (the "Petition") complaining of Bank of America, N.A. ("BOA" or "Defendant") and would show the Court as follows:

### SUMMARY

1.  Defendant has committed negligence and breach of contract in its failure to properly maintain accounting records, breach of contract for violations of the deed of trust, and violations of the Deceptive Trade Practices Act ("DTPA") and the Texas Finance Code § 392, more commonly known as the Texas Debt Collection Act ("TDCA").

2.  Plaintiffs have repeatedly notified Defendant of their serious accounting errors and inconsistent reinstatement quotes.  Additionally, Defendant breached the Deed of Trust by not giving proper notice of its intent to foreclose on Plaintiffs' property as mandated by the specific terms in the deed of trust and the requirements of the Texas Property Code.

1

3.  As late as April of 2012, Defendant indicated that Plaintiffs were current on the loan. Oddly, the very next month, Defendant indicated Plaintiffs were three to four months deficient on the loan and sought to foreclose despite no notice of default, or clarification of the accounting used to reach the deficiency amount. Plaintiffs have made diligent efforts to obtain proper accounting from Defendant, but to no avail. Despite Defendant's attempts seeking to foreclose, Plaintiffs have continued paying Defendant on the loan.

4.  In addition, for Defendants to have the power to foreclose, Defendants must satisfy the following conditions: (a) Defendant must be the current assignee of the Deed of Trust; (b) the Trustee conducting the foreclosure sale must have been appointed according to the terms of the Deed of Trust; (c) Plaintiff must have been given proper notice of the foreclosure sale; (d) notice of the foreclosure sale must have been preceded by notice that the underlying Note *will be* accelerated (as opposed to *may be* accelerated); (e) notice of acceleration must have been preceded by notice that the underlying Note was in default (and that Plaintiff had an opportunity to cure said default); and (f) that default on the underlying Note necessarily implies that Defendant must have been the *holder* of the underlying Note. Defendants did not satisfy one or more of these conditions. Thus, Defendants lack the authority to foreclose.

## DISCOVERY

5.  Discovery should be conducted under Discovery Control Plan-Level 2, pursuant to TEX. R. CIV. P. 190.2.

2

## PARTIES

6.   Plaintiffs own the property at 7206 Franciscan Court, Missouri City, Fort Bend County, Texas 77459.

7.   Defendant, Bank of America, N.A., was at all relevant times doing business in the state of Texas. Bank of America, N.A. is a foreign financial institution and may be served with process through its Registered Agent, C T Corporation System, 350 North Paul St., Dallas, Dallas County, TX 75201. Service is hereby requested.

## JURISDICTION AND VENUE

8.   The Court has jurisdiction over Defendant because Defendant does business in the State of Texas, including originating, servicing and/or owning loans, which necessarily involves contracting with Texas residents by mail or otherwise when at least one of the parties is to perform the contract in Texas. Further, Defendant's conduct giving rise to the causes of action as set forth herein occurred in whole or in part in Texas.

9.   The damages sought in this action are within the jurisdictional limits of the court.

10.  Venue is proper in Fort Bend County, Texas as the suit involves real property located in Fort Bend County, Texas. Venue is proper under TEX. CIV. PRAC. & REM. CODE ANN. Art. 15.002(a)(1) as Fort Bend County is where all or a substantial part of the events or omissions occurred.

## FACTS

11.  Plaintiffs own the property at LOT FIFTEEN (15), IN BLOCK ONE (1), OF SIENNA VILLAGE OF ANDERSON SPRINGS, SECTION SIX (6), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF

3

RECORDED UNDER PLAT FILE NO. 2006020 OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS, commonly referred to as 7206 Franciscan Court, Missouri City, Fort Bend County, Texas 77459 (the "Property").

12.   On or about July 27, 2007, a promissory note (the "Note" or "Mortgage Loan") and deed of trust (the "DOT" or "Mortgage") were executed in favor of Pulte Mortgage LLC ("Pulte" or "Original Lender"). *See Exhibit A & B*. Plaintiffs did not execute any other promissory notes or deeds of trust in connection with the Property.

13.   BOA has asserted that it is the current holder of the Note and purportedly the DOT with authority to receive payments and to foreclose. *See Exhibit C*.

**Defendant has failed to properly account for the loan payments**

14.   On January 20, 2012 Plaintiffs received a Notice of Refund, where BOA refunded money due to an overcharging of fees. *See Exhibit D*. On March 16, 2012, Plaintiffs received their monthly loan statement from BOA showing Plaintiffs' would owe $1,052.65, due on April 1, 2012, which is the regular home loan payment amount. *See Exhibit E*.

15.   On May 21, 2012, Defendant initiated foreclosure proceedings against Plaintiff. *See Exhibit F*.

16.   On December 12, 2012, Plaintiffs' counsel sent a demand letter to BOA notifying them of their serious errors in BOA's reinstatement quotes and wrongful acts involving the mortgage servicing of Plaintiffs' Property. *See Exhibit G*.

**Defendant never sent a *Notice of Default***

17.   Defendant has not shown that Plaintiffs are in default on the underlying Note, nor has Defendant sent Plaintiffs a underlying *Notice of Default* in connection with the underlying

4

Note. As previously mentioned, Defendant BOA acknowledged Plaintiffs were current on payments through April 2012.

18. In addition, Defendant offered a trial modification agreement to Plaintiffs. Plaintiffs accepted the agreement and made the payments pursuant to the terms of the trial loan modification. *See Exhibits G, H, I, J.*

### CAUSES OF ACTION

Breach of Contract (Deed of Trust)

19. Paragraph 22 of the DOT states in part "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . the notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the property." *See Exhibit B, ¶22.*

20. Thus, Defendant has breached its agreement with Plaintiffs by failing to give a Notice of Default as required by Paragraph 22 of the DOT.

21. Plaintiffs have suffered damages as a result of Defendant's breach. Specifically, if Plaintiffs had been made aware of the default, at the beginning, Plaintiffs could have paid the alleged arrearage when the amount was still relatively small. Defendant's failure to notify Plaintiffs pursuant to the DOT has resulted in a higher arrearage amount, and increased fees, above and beyond what Plaintiffs would have faced if a Notice of Default had been given.

5

22. Furthermore, Texas Property Code, Section 51.002(d) states in part "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)."

23. Defendant violated Section 51.002(d) by failing to provide Plaintiff with the requisite notice of default. Because Defendant failed to provide a notice of default as required under Section 51.002, they have also failed to give a notice of sale as required under subsection (b).

24. Because Defendant failed to meet the requirements to foreclose pursuant to Texas Property Code Section 51.002(a), which requires a notice of sale be given, Defendant has no authority to foreclose.

Negligence

25. Defendant had a duty to properly maintain the accounting records for Plaintiffs' loan.

26. Defendant breached this duty by providing Plaintiffs with inconsistent, contradictory, and incorrect quotes regarding the amounts owed on the loan.

27. Plaintiffs have suffered damages as a result of Defendant's breach. Specifically, if Defendant had properly maintained the accounting records for Plaintiffs' loan, then various late fees, attorney fees, and miscellaneous charges, incurred due to payments incorrectly being refused by Defendant would have been avoided, as well as damage to Plaintiffs' credit.

6

Deceptive Trade Practices (Laundry List)

28.    Section 17.50(1) of the Tex. Bus. & Comm. Code commonly known as the Texas
       Deceptive Trade Practices Act ("DTPA") states: "A consumer may maintain an action
       where any of the following constitute a producing cause of economic damages or
       damages for mental anguish: the use or employment by any person of a false, misleading,
       or deceptive act or practice that is (A) specifically numerated in a subdivision of
       Subsection (b) of 17.46 of this subchapter; and (B) relied on by a consumer to the
       consumer's detriment."

29.    Section 17.45(4) of the DTPA defines a consumer as "an individual ... who seeks or
       acquires by purchase or lease, any goods or services ..." Plaintiffs are consumers under
       the DTPA because Plaintiffs are individuals who acquired a home by purchase[1].
       Alternatively, Plaintiffs acquired mortgage servicing services through the purchase
       thereof[2].

30.    Sections 17.46 (b) (12) of the DTPA states:

       [T]he term "false, misleading, or deceptive acts or practices" includes, but
       is not limited to, the following act(s):

       (12) representing that an agreement confers or involves rights, remedies,
       or obligations which it does not have or involve, or which are prohibited
       by law.

31.    Defendant represented to Plaintiffs that they have the right to foreclose based on the Deed
       of Trust.  Because Defendants did not follow the requirements under the Deed of Trust

---

[1] A loan in connection with the purchase of a home is covered by the DTPA. *Flenniken v. Longview Bank and Trust*, 661 S.W.2d 705 (Tex. 1983).
[2] Mortgage Servicer represented to Plaintiff that servicer had the right to collect payments and Plaintiff believed Mortgage Servicer. Mortgage Servicer received compensation from Plaintiff as a result of Mortgage Servicer retaining a percentage of Plaintiff's mortgage payments.  Such compensation constitutes Plaintiff's purchase of services.

7

nor the Texas Property Code, Defendants' representation that the agreement (*i.e.,* Deed of Trust) conferred upon them the right to foreclose was a violation of the DTPA. Defendant's conduct was a producing cause of economic damages incurred by Plaintiffs because had Plaintiffs not relied upon said representations (to Plaintiff's detriment), Plaintiffs would not have had to pay to obtain a temporary restraining order (*e.g.,* posting bond and paying attorney's fees). Therefore, Defendant is liable to Plaintiffs according to Section 1746(b)(12) of the DTPA.

## Violation of Texas Debt Collection Act

32. Defendant is a debt collector as they regularly engage in debt collection of consumer debts that are due of alleged to be due by a creditor.

33. Defendant violated the Texas Finance Code § 392.301(a)(8) when Defendant made fraudulent, deceptive and misleading representations to collect a debt through foreclosure. Specifically, Defendant's threatened foreclosure without taking the requisite actions required under both the Deed of Trust and the Texas Property Code Section 51.002 *et seq.*

34. Defendant's wrongful conduct was committed against Plaintiffs.

35. Defendant's wrongful conduct caused injury to Plaintiffs, which resulted in damages, including but not limited to posting bond and paying attorney's fees to stop foreclosure.

### CONDITIONS PRECEDENT

36. All conditions precedent to Plaintiffs' claim for relief have been performed or have occurred. If any condition precedent has not occurred or been performed, Plaintiffs

8

respectfully request those causes of action to be abated until such time as those conditions have occurred or been performed.

### STIPULATION

37. Plaintiffs stipulate that the damages in this action will be limited such that the amount in controversy (as that term is defined in 28 USCS § 1441) is less than $75,000.

### REQUESTS FOR DISCLOSURES

38. Pursuant to Rule 194, TEX. R. CIV. P., Defendants are requests to disclose on or before fifty (50) days after service of this request, the information or material described in Rule 194.2(a), (b), (c), (d), (e), (f), (g), (h), and (i) of TEX. R. CIV. P.

### DEMAND FOR JURY TRIAL

39. Plaintiffs hereby demand a jury trial and will tender the requisite fee as required prior to trial.

### PRAYER FOR RELIEF

40. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer, and the following order be entered:

    a. declares that Defendant Bank of America, N.A. does not have the power of sale pursuant to the Deed of Trust;

    b. Actual damages;

    c. Statutory damages where applicable;

    d. Treble damages where applicable;

    e. Exemplary damages where applicable;

9

    f.   Reasonable and necessary attorneys' fees;

    g.  Prejudgment and post-judgment interest;

    h.  Costs of suit to be taxed against Defendants;

    i.   All other relief, in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted this _____10ᵗʰ_____ day of February 2013.

MIDDAGH & LANE, P.L.L.C.

By: _____
Robert C. Lane
State Bar No. 24046263
Anh Thu N. Dinh
State Bar No. 24071480
Andrew Haut
State Bar No. 24067649
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile

**EXHIBITS**
Exhibit A – Note
Exhibit B – DOT
Exhibit C – FC Notice
Exhibit D – Notice of Refund
Exhibit E – April 2012 Monthly Statement
Exhibit F – Demand Letter
Exhibit G – Executed Loan Modification
Exhibit H – December 2012 Loan Modification Payment
Exhibit I – January 2013 Loan Modification Payment
Exhibit J – February 2013 Loan Modification Payment

10



# Exhibit A

# NOTE

94-278919A
VRU# 1-888-679-6377
MIN# 100057400003389519

July 27, 2007                    Houston                    Texas
[Date]                          [City]                     [State]

7206 Franciscan Ct, Missouri City, TX  77459

[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $117,120.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is Pulte Mortgage LLC

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of        6.999%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st        day of each month beginning on September 1, 2007        . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on August 1, 2022        , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at 7475 South Joliet Street Englewood, CO 80112
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,052.65

### 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for Texas

-5N(TX) (0011)          Form 3200 1/01    TX40A    (Rev. 02/02)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials

94-278919A

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N(TX) (0011)     TX40B                          Page 2 of 3                                    Form 3200 1/01
                                                                                                Initials:

94-278919A

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED



_____(Seal)          _____(Seal)
Arthur S. Brazil, II        -Borrower      Lorraine S. Brazil      -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                              -Borrower

[Sign Original Only]

-6N(TX) (0011)    TX40C                  Page 3 of 3                  Form 3200 1/01



# Exhibit B

Return To:

Pulte Mortgage, LLC
7475 S. Joliet St.
Englewood, CO 80112
Attn: Sales & Acquisitions

Prepared By:
Aubrey Dickson Martin, Jr.

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

MIN 100057400003389519
VRU# 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated July 27, 2007 ,
together with all Riders to this document.
(B) "Borrower" is Arthur R. Brazil II and Lorraine S. Brazil  Husband and Wife

Borrower is the grantor under this Security Instrument.
(C) "Lender" is Pulte Mortgage LLC

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3044  1/01

-6A(TX) (0505).01
Page 1 of 18                                    MTX41AFORM94-27891    (Rev. 07/06)
VMP Mortgage Solutions, Inc.

Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is 7475 South Joliet Street, Englewood, CO 80112

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is Karen Oakerson

. Trustee's address is

16670 Park Row Blvd., #110  Houston, TX 77084

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is a beneficiary under
this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated July 27, 2007
The Note states that Borrower owes LenderOne Hundred Seventeen Thousand One Hundred
Twenty And 00/100                                                            Dollars
(U.S. $117,120.00        ) plus interest.  Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1, 2022
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following
Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider  ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider          ☒ Planned Unit Development Rider  ☒ 1-4 Family Rider
☐ VA Rider               ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

MTX41BFORM94-27891

-6A(TX) (0409).01                          Page 2 of 16                          Form 3044  1/01

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Fort Bend :
[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

Lot Fifteen (15), in Block One (1), of SIENNA VILLAGE OF ANDERSON SPRINGS, SECTION SIX (6), a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded under Plat File No. 2006020 of the Plat Records of Fort Bend County, Texas.

Parcel ID Number:                                        which currently has the address of
7206 Franciscan Ct                                                              [Street]
Missouri City                         [City], Texas 77459      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this

MTX41CFORM94-27891

-6A(TX) (0505).01                                    Page 3 of 18                                    Form 3044  1/01

Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

MTX41XFORM94-27891

-6A(TX) (0308).01              Page 5 of 16              Form 3044   1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

MTX41FFORM94-27891

6A(TX) (0808).01                          Page 6 of 16                                      Form 3044  1/01

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MTX41GFORM94-27891

**-6A(TX)** (0609).01                     Page 7 of 18                     Form 3044  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MTX41IFORM94-27891

-6A(TX) (0308).01                    Page 8 of 10                    Form 3044  1/01

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first-class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

[x] Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the



Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Arthur B. Brazil, II                    -Borrower

_____ (Seal)
Lorraine S. Brazil                      -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

MTX41OFORM94-27891
-6A(TX) (0608).01          Page 16 of 16          Form 3044   1/01



STATE OF TEXAS
County of Harris

Before me _the undersigned authority_ on this day personally appeared
Arthur B. Brazil, II and Lorraine S. Brazil

known to me (or proved to me on the oath of
or through _Texas DL_ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this __27__ day of __July 2007__

(Seal)

TERRY BROWNING
Notary Public, State of Texas
My Commission Expires 09-04-2009

Notary Public

My Commission Expires:

MTX41PFFORM94-27891    Page 16 of 16    Initials: ___    Form 3044   1/01

VMP-8A(TX) (0404).01



# Exhibit C

7206 FRANCISCAN CT
MISSOURI CITY, TX 77459

20120031402880

## NOTICE OF [SUBSTITUTE] TRUSTEE'S SALE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

1.  **Date, Time, and Place of Sale.**

    **Date:** February 05, 2013

    **Time:** The sale will begin at 1:00PM or not later than three hours after that time.

    **Place** FORT BEND COUNTY JUSTICE CENTER PARKING GARAGE, IN LEVEL 1 AT THE SOUTH END, WEST CORNER, NEAR STAIRWAY "B" OR AS DESIGNATED BY THE COUNTY COMMISSIONERS or as designated by the county commissioners.

2.  **Terms of Sale.** Cash.

3.  **Instrument to be Foreclosed.** The Instrument to be foreclosed is the Deed of Trust or Contract Lien dated July 27, 2007 and recorded in Document CLERK'S FILE NO. 2007095173 real property records of FORT BEND County, Texas, with ARTHUR B BRAZIL II AND LORRAINE S BRAZIL, grantor(s) and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE, mortgagee.

4.  **Obligations Secured.** Deed of Trust or Contract Lien executed by ARTHUR B BRAZIL II AND LORRAINE S BRAZIL, securing the payment of the indebtednesses in the original principal amount of $117,120.00, and obligations therein described including but not limited to the promissory note and all modifications, renewals and extensions of the promissory note. BANK OF AMERICA, N.A. is the current mortgagee of the note and Deed of Trust or Contract Lien.

5.  **Property to Be Sold.** The property to be sold is described as follows:

    LOT FIFTEEN (15), IN BLOCK ONE (1), OF SIENNA VILLAGE OF ANDERSON SPRINGS, SECTION SIX (6), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER PLAT FILE NO. 2006020 OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

6.  **Mortgage Servicer Information.** The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the Property referenced above. BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, as Mortgage Servicer, is representing the current mortgagee, whose address is:

c/o BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
PTX-C-32 7105 CORPORATE
PLANO, TX 75024

BRIAN CORMIER, RICKIE SALCIDO, OR JEFFREY HARDAWAY
Substitute Trustee
c/o BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001

NOS20120031402880

NST35SIG.rpt - (10/24/2012) - Ver-35



# Exhibit D

C3_2000 LASFCHKH 14370 12/21/2011

**Bank of America**
Home Loans

CA6-919-01-17
450 American Street
Simi Valley, CA 93065

0000104-0000104 FORDR 001 ------ 912197

ARTHUR B, II & LORRAINE S BRAZIL
9818 WILLIAMS BEND CT
MISSOURI CITY, TX 77459-6279

**Notice Date:** January 20, 2012
**Account No.:** 172433795
**Property Address:**
7206 FRANCISCAN CT
MISSOURI CITY, TX 77459

Dear ARTHUR B, II & LORRAINE S BRAZIL:

We are pleased to inform you that during a recent review of your loan, we discovered an overage in the amount of $14.97. This overage is a result of an overpayment of fees on your loan. We are mailing a refund check in the amount of $14.97 and you should receive your check within ten business days.

If you have any questions or need additional assistance, please call us at 1.800.669.6077, Monday – Friday 7 a.m. - 10 p.m. Eastern. We appreciate the opportunity to serve your home loan needs.

Home Loan Team
Bank of America, N.A.

Mortgages funded and administered by an Equal Housing Lender. 
♻ Protect your personal information before recycling this document.



BANK OF AMERICA

| DATE | A/P EXPENSE CHECK NO. |
|---|---|
| 02/09/12 | 0012813277 |

NAT1 *110200710

| INVOICE DATE | INVOICE NUMBER | DESCRIPTION | GROSS | DISCOUNT | NET | TYPE |
|---|---|---|---|---|---|---|
| 012412 | 9008853251036 | 970215345 | 14.97 | 0.00 | 14.97 | 9999 |
| | | **TOTAL** | 14.97 | 0.00 | 14.97 | |

Please detach stub before depositing

00-DK-6302B 12-200A

---

**BankofAmerica**

BANK OF AMERICA, N.A.
115 DUPONT DRIVE
PO 141-01-10
PROVIDENCE, RI        02901

888-560-5483

A/P EXPENSE CHECK NO.

0012813277
84-1278/611

PAY   FOURTEEN DOLLARS NINETY-SEVEN CENTS

| DATE | CHECK AMOUNT |
|---|---|
| 02/09/12 | ************14.97 |

TO THE ORDER OF

ARTHUR B II & LORRAINE S
BRAZIL
9818 WILLIAMS BEND CT
MISSOURI CITY TX 77459

AUTHORIZED SIGNATURE

⑈0012813277⑈  ⑆061112788⑆  3299985343⑈

WHERE THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.  HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.



# Exhibit E



**Bank of America**

Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date 03/18/2012
**Account Number 172433795**
Property address
7205 Franciscan Ct

0049401 01 AT 0.371 **AUTO  T4 2 0173 77459-9279
MSR CE A0 6000----0--2---Jan/an IN 1 P45/49
**ARTHUR B, II & LORRAINE S BRAZIL**
9818 Williams Bend Ct
Missouri City TX 77459-9279

**FOR CUSTOMER SERVICE: 1.800.669.6607**

## Sign Up For Account Alerts

With Bank of America, N.A. PayPlan Services, you don't need to receive monthly paper statements anymore! You can get something you may find of more value—Account Alerts. These timely emails help in many ways. They:

- Confirm when your payment has posted
- Keep you up-to-date on important account information

So visit www.bankofamerica.com and sign up for Account Alerts today!

| HOME LOAN SUMMARY | Home loan overview as of 03/18/2012 | | Amount due on 04/01/2012 as of 03/18/2012 | |
|---|---|---|---|---|
| | Principal Balance | $91,254.76 | Home loan payment due 04/01/2012 | $1,052.65 |
| | | | Late Charge if payment received after 04/18/2012 (see next page for account details) | $52.63 |

| DID YOU KNOW? | Your account …HOW YOU WANT IT, WHEN YOU WANT IT | Want more flexibility? Bank of America, N.A. online payment |
|---|---|---|
| | Next time you want to confirm a payment (or even make a payment), log in to www.bankofamerica.com. Manage your account online with powerful tools. Log in today! Restrictions apply. | service, MortgagePay on the Web, allows you to make your payments around the clock. Visit www.bankofamerica.com and check out the demo to see just how easy it is. |

Calls may be monitored or recorded to ensure quality service. We may charge you a fee (of up to $48.00) for any payment returned or rejected by your financial institution, subject to applicable law.

**PAYMENT INSTRUCTIONS**

1. Please
   - don't send cash
   - don't staple the check to the payment coupon
   - don't include correspondence
   - include coupon with payment

2. Write the account number on the check or money order.

3. Make the check payable to
   Bank of America, N.A.
   Attn: Remittance Processing
   PO Box 650070
   Dallas, TX 75265-0070

| Account number  172433795 | (9) |
|---|---|
| Arthur B, II & Lorraine S Brazil | |
| 7205 Franciscan Ct | |
| Missouri City, TX 77459 | |

SEE OTHER SIDE FOR IMPORTANT INFORMATION       027

Bank of America, N.A.
PO BOX 650070
DALLAS, TX 75265-0070

| Payment due Apr 1, 2012 | *$1,052.65 |
|---|---|
| If payment received after Apr 18, 2012 | $1,105.28 |

* "Payment due" does not include outstanding late charges or any past due payments.

| Additional Principal | |
| Additional Escrow | |
| Check total | |

172433795900000105265000110528

⑆586990058⑆ 172433795⑈

0049401 0013901

2 of 2

## HOME LOAN DETAILS

**Monthly payment breakdown as of 03/16/2012**

| | |
|---|---|
| Principal and/or interest payment | $1,052.65 |
| Total monthly home loan payment | $1,052.65 |

**Loan type and term**

| | |
|---|---|
| Loan type | 15 Yr Conventional Jumbo |
| Contractual remaining term | 10 Years, 5 Months |
| Interest rate | 6.999% |

**Escrow account expenses**

*We are responsible for the payment of the following escrow items with the exception of the items marked with an asterisk (*).*
*The payment of the items marked with an asterisk (*) is the responsibility of the homeowner.*

| Description | Payee | Policy number/Tax ID | Frequency | Next due date | Amount due |
|---|---|---|---|---|---|
| * Homeowners insurance | Underwriters At Lloyds of Lond | PF03392 | Annual | 03/02/2012 | 1,444.81 |

**Home loan activity since your last statement**

| Date | Description | Principal | Interest | Additional principal reduction | Total |
|---|---|---|---|---|---|
| 03/16/2012 | March payment | $516.13 | $36.52 | | 1,052.65 |
| 03/16/2012 | Misc posting | | | 147.35 | 147.35 |
| | **Ending balance** | **$94,254.78** | | | |

**NOTE: The ending balance is probably not the amount to pay off your loan. For payoff information, you may use our 24-hour automated information system at 1.800.669.6383.

## TO CONTACT US

**CREDIT REPORTING NOTICE**

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

For up-to-the-minute information about the account, use our 24-hour automated information system. To ask us about the statement or account information, call 1.800.669.6607, Monday-Friday 7 a.m. - 7 p.m. Local Time. Calls may be monitored and/or recorded for service quality purposes. Se habla español 1.800.295.0025. TDD 1.800.300.6407 Please have the account number available when you call.

Or write to us at:
The address for general inquiries and all RESPA Qualified Written Requests is: Bank of America, N.A., Attn:

Customer Service CA6-919-01-41, PO Box 5170, Simi Valley, CA 93062-5170

Tax Dept CA6-913-LB-01, PO Box 10211, Van Nuys, CA 91410-0211
Insurance Dept, PO Box 961291, Fort Worth, TX 76161-0291
Payments, Attn: Remittance Processing PO Box 650070, Dallas, TX 75265-0070
*Overnight delivering:Retail Payment Services, TX1-160-06-01, Dallas InfoMart, STE 6020, 1950 N Stemmons PWY, Dallas, TX 75207-3134
Our website: www.bankofamerica.com
Your account information is available in Spanish on the site mentioned above.
*The facility at this address does not accept walk-up payments. It accepts overnight mail only. Payments can be made by Phone, Online, Mail, or at Bank of America Banking Centers.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

Account Number 172433795
E-mail use: Providing your e-mail address(es) below will allow us to send you information on your account
Arthur B, II & Lorraine S Brazil
E-mail address

E-mail address

How we post your payment: All accepted payments of principal and interest will be applied to this loan and outstanding indebtedness due, unless otherwise expressly prohibited or limited by law. If you satisfy an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow obligation due, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an individual amount applied to future payments, rather than principal reduction.

Postdated checks will be processed on the date received rather than on the date you agreed to keep the date written on the check as a condition of a repayment plan. Payments by phone received by 8:00 PM Pacific Time on a business day will be effective the same day. Payments by phone received after 8:00 PM Pacific Time or on a nonbusiness day/holiday will be applied to your account no later than the next business day.

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated at 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.



# Exhibit F

Barrett Daffin Frappier Turner & Engel, LLP
A Partnership Including Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Telephone: (972) 419-1163
Telecopier: (972) 386-7673

May 21, 2012

Certified Mail 7160 9668 9670 6315 6383
ARTHUR B BRAZIL II
9818 WILLIAMS BEND CT
MISSOURI CITY, TX 77459

RE:   Mortgage Servicer:   BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS
                           SERVICING, LP
      Loan No.:            172433795
      BDFTE No.:           20120031402880

This law firm represents BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP,
the Mortgage Servicer, in its mortgage banking activities in the State of Texas.  We have been authorized by the Mortgage Servicer to
initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (the "Debt").

BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP is acting as the Mortgage
Servicer for BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA
COUNTRYWIDE HOME LOANS SERVICING LP, who is the Mortgagee of the Note and Deed of Trust associated with the above
referenced loan.  BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, as
Mortgage Servicer, is representing the Mortgagee, whose address is:

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE
HOME LOANS SERVICING LP
c/o BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP
PTX-C-32
7105 CORPORATE
PLANO, TX 75024

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee.  Pursuant to
the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer
any resulting foreclosure of the property securing the above referenced loan.

This letter is formal notice of the following:

1.   Payment of the past due balance on the Debt has not been received by the Mortgage Servicer.  Because of this default, the
     Mortgagee has elected to ACCELERATE the maturity of the Debt.

2.   The amount of the Debt as of the date of this notice, according to the records of the Mortgage Servicer, is $103,593.46.
     Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater.  If you
     pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you
     before depositing the check for collection.  For further information, write or call the Foreclosure Department of this firm at
     (972) 419-1163.  Payment must be made in certified funds, cashier's check or money order(s).

3.   As designated on the enclosed Notice of Trustee's Sale, the Trustee, or the Substitute Trustee, will sell the real estate therein
     described to the highest bidder for cash.

4.   All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as
     provided by Texas law.  You may obtain reinstatement figures by calling the Foreclosure Department of this firm at (972)
     419-1163.

5.   All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any
     other defense to acceleration and foreclosure which they may have.

May 21, 2012

Certified Mail 7160 9668 9670 6315 6383
20120031402880
ARTHUR B BRAZIL II
9818 WILLIAMS BEND CT
MISSOURI CITY, TX 77459

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the Debt or any part thereof. If you don't dispute the Debt within that period, this firm will assume that the Debt is valid. If you do dispute the Debt by notifying this firm in writing, the firm will obtain and mail verification of the Debt to you. If within the same period, you request in writing the name and address of the original mortgagee, and if the original mortgagee is different from the current mortgagee, this firm will furnish you with that information.

The law does not require this firm to wait until the end of the thirty-day period before taking action to collect the Debt. If, however, you have requested verification of the Debt or the name and address of the original mortgagee within the time stated above, this firm will cease collection activities until such requested information has been mailed to you.

*Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.*

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, the Mortgage Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the Real Estate may be affected.

Sincerely,

*[signature]*

Barrett Daffin Frappier Turner & Engel, LLP

Enclosed: Notice of Trustee Sale



# Exhibit G



**FedEx**

## 544713593150

Ship (P/U) date :
**Sat 17/11/2012 15:48**
BROOMFIELD, CO  US

**Delivered**
Signed for by: D.TRAUMON

Actual delivery :
**Mon 19/11/2012**
BROOMFIELD, CO  US

### Travel History

| ▲ Date/Time | Activity | Location |
| --- | --- | --- |
| - 19/11/2012 - Monday | | |
| 09:46 | Delivered | BROOMFIELD, CO |
| 08:58 | On FedEx vehicle for delivery | ARVADA, CO |
| 08:50 | At local FedEx facility | ARVADA, CO |
| 04:00 | At destination sort facility | DENVER, CO |
| - 18/11/2012 - Sunday | | |
| 23:46 | At local FedEx facility | DENVER, CO |
| 16:06 | Departed FedEx location | MEMPHIS, TN |
| 08:35 | Arrived at FedEx location | MEMPHIS, TN |
| - 17/11/2012 - Saturday | | |
| 18:36 | Left FedEx origin facility | HOUSTON, TX |
| 15:48 | Picked up | SUGAR LAND, TX |
| | Tendered at FedEx Office | |
| - 06/11/2012 - Tuesday | | |
| 12:27 | Shipment information sent to FedEx | |

Local Scan Time

### Shipment Facts

| | | | |
| --- | --- | --- | --- |
| Tracking number | 544713593150 | Service | FedEx Standard Overnight |
| Weight | 0.5 lbs | Delivered To | Receptionist/Front Desk |
| Total pieces | 1 | Total shipment weight | 0.5 lbs / 0.2 kgs |
| Purchase order number | BFAM3TDR_11052012_PA | Invoice number | 172433795 |
| Shipper reference | 112438-112437 | Packaging | FedEx Envelope |
| Special handling section | Deliver Weekday | | |



PLEASE FOLD THIS SHIPPING DOCUMENT IN HALF AND PLACE IT IN A WAYBILL POUCH AFFIXED TO YOUR SHIPMENT SO THAT THE BARCODE PORTION OF THE LABEL CAN BE READ AND SCANNED. **WARNING: USE ONLY THE PRINTED ORIGINAL LABEL FOR SHIPPING. USING A PHOTOCOPY OF THIS LABEL FOR SHIPPING PURPOSES IS FRAUDULENT AND COULD RESULT IN ADDITIONAL BILLING CHARGES, ALONG WITH THE CANCELLATION OF YOUR FEDEX ACCOUNT NUMBER.

From: Origin ID: WPOA (303) 998 8937
BFAM3TDR_11052012
ARTHUR B BRAZIL II
Bank of America N.A.-HOME RETENTIO
11802 RIDGE PARKWAY Ste 100 HRM
BROOMFIELD, CO 80021

**FedEx** Express

Ship Date: 08NOV12
ActWgt: 1 LB
CAD: 747693FXRS1009
Account#: S *********

Delivery Address Bar Code



SHIP TO: (303) 998 8937          BILL THIRD PARTY

Ref # 112437-112437

Bank of America N.A.

11802 RIDGE PARKWAY Ste 100 HRM
HOME RETENTION
BROOMFIELD, CO 80021

RMA #:
Return Reason:



TRK#
0221    5447 1359 4320

FedEx RETURNS    A2
STANDARD OVERNIGHT

72 WPOA

80021
CO-US
DEN





**BRAZILCO, INC.**
**OPERATING ACCOUNT**
6818 WILLIAMS BEND CT
MISSOURI CITY, TX 77459

4697

35-1034/1130
.21371

DATE  11-17-12

PAY TO THE ORDER OF  *Bank of America*    $ 1215,53

*Twelve hundred and fifteen Dollars & 53/100*    DOLLARS

**BBVA Compass**    Compass Bank
Missouri City, TX

172433795

FOR  *Payment*

⑈004697⑈ ⑆113010549⑆ 253123289⑈

---

Please detach and include with your first month's Trial Period Plan modified mortgage payment.
(If you have already made your first month's trial period payment, please disregard this coupon.)

Bank of America 🏠 Home Loans

ARTHUR B BRAZIL II
LORRAINE S BRAZIL
7206 FRANCISCAN CT
MISSOURI CITY, TX 77459

Loan # 172433795
Enclosed is my trial period mortgage payment amount of $1,215.53.

Send your payment to:

Bank of America, N.A.
Payment Processing
P.O. Box 660833
Dallas, TX 75266-0833

PLACE
STAMP
HERE

Bank of America, N.A.
NC4-105-02-22
4161 Piedmont Pkwy
Greensboro, NC 27410-8110

 

You're on your way toward an
*affordable mortgage payment.*

**Please contact us by 11/20/2012 or
make your first trial period payment if
you intend to accept our offer.**

November 6, 2012

ARTHUR B BRAZIL II
LORRAINE S BRAZIL
7206 FRANCISCAN CT
MISSOURI CITY, TX 77459

Loan Number: 172433795

Dear ARTHUR B BRAZIL II and LORRAINE S BRAZIL:

Your mortgage is seriously delinquent. We have tried to contact you to discuss foreclosure prevention options that may
be available, but time is running out. To avoid foreclosure, you must contact us.

Based on an estimate of your home's value, you are approved to enter into a Trial Period Plan for a mortgage loan
modification. This is the next step toward qualifying for affordable and sustainable mortgage payments. Please read this
letter so that you understand all the steps you need to take to permanently modify your mortgage.

**To suspend foreclosure, you must respond by 11/20/2012**

To prevent your loan from starting the foreclosure process or to suspend foreclosure if that process has already begun,
you must notify us by 11/20/2012 of your intent to accept this trial offer through one of the following options:

* Sign and return the enclosed *Intent to Accept Trial Offer* form using the prepaid envelope provided
* Make your first trial payment

**To accept this offer**

Acceptance of the trial offer requires you to make your first trial period payment by no later than 12/01/2012. Even if
you contact us or respond by returning the above referenced *Intent to Accept Trial Offer* form, you must also send your
first trial payment by the requested date to accept this offer. You must pay the exact amount of your Trial Period Plan
payments instead of your normal monthly mortgage payments.

**Send in your monthly Trial Period Plan payments — instead of your normal monthly mortgage payments — as
follows:**

| Trial Period Plan | | |
|---|---|---|
| 1st payment: | $1,215.53 | by 12/01/2012 |
| 2nd payment: | $1,215.53 | by 01/01/2013 |
| 3rd payment: | $1,215.53 | by 02/01/2013 |

**What you need to do next**

* It is important that you carefully review the *Frequently Asked Questions* and *Additional Trial Period Plan Information
and Legal Notices* information attached.

* Make each of the above payments on time and in the amount shown. Payment coupons are included in this
package if you wish to send your payment in the mail, or you can call 1.800.669.0102 and we can deduct your
payment directly from your checking account, if applicable. (There are no fees to make your payment by phone
during the trial period.)

* After you make all trial period payments on time, and if you continue to meet all of the eligibility requirements of
your modification program, your mortgage will be permanently modified. Please pay the specific amounts shown
above because paying a different amount could make you ineligible for a permanent modification. **We must
receive each payment on time and in the month in which it is due. If you miss a payment or do not comply
with any of the other terms of your trial period, this offer will end and your mortgage loan will not be
modified under this offer.** If your last trial period payment is made in the last half of the month it is due, we may
extend your Trial Period Plan by an extra month.



G3_3100-2

- Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

- Please Note: We may be able to offer you a permanent modification with a lower monthly payment. If you would like to be evaluated for this option, we need you to provide us with your financial and hardship information (Borrower Response Package). The enclosed Homeowner Checklist provides step-by-step instructions on what documentation we need from you. Please send your Borrower Response Package with the requested information by 11/20/2012. We have included a pre-paid envelope for your convenience.

- This is your final opportunity to qualify for a permanent modification of your mortgage loan, so please contact us by the requested date to let us know you are accepting the trial offer.

Please note that except for the reduction of your monthly mortgage payment amount during the trial period, all other terms and provisions of your existing mortgage loan remain in effect and will not change until your loan is permanently modified.

If you have any questions, please call 1.800.669.0102. If you cannot afford the Trial Period Plan payments above or if you have decided to leave your home, please call 1.800.669.0102 to discuss other options that may be available to avoid foreclosure.

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for informational purposes only and is not a demand for payment, an attempt to collect a debt or an attempt to impose personal liability for any discharged debt.

We are glad you have been approved for a Trial Period Plan offer. Start today by making your first trial period payment.

Home Loan Team
Bank of America, N.A.

**Bank of America** 🇺🇸 Home Loans

Enclosures: (1) Frequently Asked Questions (2) Additional Trial Period Plan Information and Legal Notices (3) Intent to Accept Trial Offer form (4) Payment Coupons (5) Information on Avoiding Foreclosure (6) Homeowner Checklist (7) Uniform Borrower Assistance Form (8) IRS Form 4506-T (9) Non-Borrower Credit Authorization Form (10) Blank IRS Form 4506-T for Non-Borrowers (11) Prepaid envelope

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments.

Mortgages funded and administered by an 🏠 Equal Housing Lender.
♻ Protect your personal information before recycling this document

C3_3100-2

Loan Number: 172433795

Dear Bank of America:

Please accept this as notification that I intend to accept the Trial Plan Offer dated 12/01/2012. I understand this notice serves only to request suspension of foreclosure activity. To fully accept the Trial Period Plan offer, I must make the first trial payment by the payment on or before due date. I also understand that I may make the payment early, but failure to make the first trial payment by the due date will result in cancellation of the Trial Plan Offer. If the Trial Plan Offer is cancelled, my mortgage will not be modified under this offer and foreclosure activity will continue.

This letter is to inform Bank of America, N.A. of my/our intent to accept the Trial Period Plan offer.

_____          _____11/17/12_____
ARTHUR B BRAZIL II Signature                Date

_____          _____11/17/12_____
LORRAINE S BRAZIL Signature                 Date

**Reminder about suspending foreclosure**

To prevent your loan from starting the foreclosure process or to suspend foreclosure if that process has already begun, you must notify us by 11/20/2012 of your intent to accept this trial offer through one of the following options:

- Sign and return this *Intent to Accept Trial Offer* form using the prepaid envelope provided or mail to the address below
- Make your first trial payment

**Please Note:** If we do not receive your acceptance to this trial offer by one of the options above by 11/20/2012, we can only accept the first trial payment in certified funds to prevent foreclosure. This payment must still be made by the first payment due date noted below and your remaining trial payments can be paid by check/money order or deducted directly from your checking account, if applicable.

Additionally, if you have a scheduled foreclosure sale date and take the steps to accept this offer (as described above), Bank of America will make every effort to work with the investor on your loan and the foreclosure court to postpone your sale. However, in some cases, the court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the sale or the investor on your loan may not halt the scheduled sale.

Mail to:
Bank of America, N.A.
11802 RIDGE PARKWAY, Ste 100 HRM, HOME RETENTION
BROOMFIELD, CO 80021

172433795*USC*FNMA*112437

C3_2658-3



# Exhibit H

Thursday, Dec 27, 2012 10:10:06 a.m. CT

## View Check Image

Zoom Out    Zoom In    Print Screen    Send Us a Message

#4697                Date: 11/23                Amount:$1,215.53

---

8\10\21                **BRAZILCO, INC.**                                4697
                       **OPERATING ACCOUNT**
                       9318 WILLIAMS BEND CT
                       MISSOURI CITY, TX 77459

                                          DATE   11-17-12

PAY
TO THE
ORDER OF   Bank of America                        $ 1215.53

Twelve hundred and fifteen Dollars & 53/100    DOLLARS

**BBVA Compass**   Compass Bank
                   Sugar Land, TX

ACCT 172433795

FOR   Payment

⑈004697⑈ ⑈113010547⑈ 253123 2898⑈

View Back Image    OK

Privacy Policy and Security Statement | Online Banking Agreement | MyCompass Agreement | Mobile Banking Addendum | Contact Us
©2012 Compass Bancshares, Inc. Compass Bank is a Member FDIC and an Equal Housing Lender.
BBVA Compass is a trade name of Compass Bank, a member of the BBVA Group.
Online Banking Questions and Technical Support: 1-800-273-1057
All other Account Questions and Support: 1-800-COMPASS (1-800-266-7277)

Thursday, Dec 27, 2012 10:10:21 a.m. CT

# View Check Image

Zoom Out    Zoom In    Print Screen    Send Us a Message

#4697          Date: 11/23          Amount:$1,216.53

View Front Image    OK

Privacy Policy and Security Statement | Online Banking Agreement | MyCompass Agreement | Mobile Banking Addendum | Contact Us
©2012 Compass Bancshares, Inc. Compass Bank is a Member FDIC and an Equal Housing Lender.
BBVA Compass is a trade name of Compass Bank, a member of the BBVA Group.
Online Banking Questions and Technical Support: 1-800-273-1057
All other Account Questions and Support: 1-800-COMPASS (1-800-266-7277)



# Exhibit I

**IMPORTANT!**
Winter storm conditions are causing delays and disruptions in the eastern U.S. Learn More



FedEx

**899005904238**

Ship (P/U) date :
Thur 12/27/2012 2:40 pm

MIS  US

Actual delivery :
Fri 12/28/2012 10:08 am

US

**Delivered**
Signed for by: P.CARTER

## Travel History

| Date/Time | Activity | Location |
|---|---|---|
| - 12/28/2012 - Friday | | |
| 10:08 am | Delivered | |
| 8:25 am | On FedEx vehicle for delivery | DALLAS, TX |
| 7:44 am | At local FedEx facility | DALLAS, TX |
| 4:25 am | Departed FedEx location | FORT WORTH, TX |
| 12:24 am | Arrived at FedEx location | FORT WORTH, TX |
| - 12/27/2012 - Thursday | | |
| 8:30 pm | Left FedEx origin facility | HOUSTON, TX |
| 2:40 pm | Picked up | SUGAR LAND, TX |
| | Tendered at FedEx Office | |

Local Scan Time

## Shipment Facts

| | | | |
|---|---|---|---|
| Tracking number | 899005904238 | Service | FedEx Standard Overnight |
| Weight | 0.1 lbs | Dimensions | 1x1x1 in. |
| Signature services | Direct signature required | Delivered To | Receptionist/Front Desk |
| Total pieces | 1 | Total shipment weight | 0.1 lbs / 0 kgs |
| Packaging | FedEx Envelope | Special handling section | Deliver Weekday, Direct Signature Required |







FedEx Office.

4407 HIGHWAY 6
SUGAR LAND, TX 77478



**Exhibit J**

**IMPORTANT!**
The presidential inauguration is causing unavoidable service delays in the Washington, D.C. area. Learn More



FedEx

**800562884064**

| Ship (P/U) date : | | Actual delivery : |
|---|---|---|
| Tues 1/15/2013 12:18 pm | **Delivered** | Thur 1/17/2013 10:11 am |
| MIS US | Signed for by: T.BULLIA | US |

### Travel History

| ▲Date/Time | Activity | Location |
|---|---|---|
| – 1/17/2013 – Thursday | | |
| 10:04 am | Delivered | |
| 9:47 am | On FedEx vehicle for delivery | GREENSBORO, NC |
| 7:36 am | At local FedEx facility | GREENSBORO, NC |
| 6:31 am | At destination sort facility | GREENSBORO, NC |
| 4:21 am | Departed FedEx location | MEMPHIS, TN |
| – 1/16/2013 – Wednesday | | |
| 9:18 am | Arrived at FedEx location | MEMPHIS, TN |
| – 1/15/2013 – Tuesday | | |
| 10:46 pm | At local FedEx facility | HOUSTON, TX |
| 8:59 pm | Left FedEx origin facility | HOUSTON, TX |
| 12:18 pm | Picked up | SUGAR LAND, TX |
| | Tendered at FedEx Office | |
| | | Local Scan Time |

### Shipment Facts

| | | | |
|---|---|---|---|
| Tracking number | 800562884064 | Service | FedEx Express Saver |
| Weight | 0.1 lbs | Dimensions | 1x1x1 in. |
| Delivered To | Receptionist/Front Desk | Total pieces | 1 |
| Total shipment weight | 0.1 lbs / 0 kgs | Packaging | FedEx Envelope |
| Special handling section | Deliver Weekday | | |



FedEx Office.

4407 HIGHWAY 6
SUGAR LAND, TX 77478

Location:        NQIKK
Device ID:       NQIKK-POS1
Employee:        1787627
Transaction:     79073374996

EXPRESS SAVER
800562684064    0.10 lb (S)        14.52
Scheduled Delivery Date 01/18/2013

      Shipment subtotal:           14.52


               Total Due:          14.52

          (V) CreditCard:          14.52
          ************2356

M = Weight entered manually
S = Weight read from scale
T = Taxable item

Subject to additional charges. See FedEx Service Guide
at fedex.com for details. All merchandise sales final.



Bank of America, N.A.
NC4-105-02-22
4161 Piedmont Pkwy
Greensboro, NC 27410-8110

PLACE
STAMP
HERE

Please detach and include with your third month's Trial Period Plan modified mortgage payment.

ARTHUR B BRAZIL II
LORRAINE S BRAZIL
7206 FRANCISCAN CT
MISSOURI CITY, TX 77459

Loan # 172433795
Enclosed is my trial period mortgage payment amount of $1,215.53.

Send your payment to:

Bank of America, N.A.
Payment Processing
P.O. Box 660833
Dallas, TX 75266-0833

**BBVA** Compass    CASHIER'S CHECK    500970468
CHEQUE DE CAJA

PAY
TO THE     BANK OF AMERICA
ORDER OF
Paguese por este cheque a lo orden de

Date/Fecha: 01/15/2013        882        $1,215.53

*** ONE THOUSAND TWO HUNDRED FIFTEEN DOLLARS AND 53 CENTS ***

Remitter/Remitente:    BARRY BRAZIL
Description/Descripción: 172433795

AUTHORIZED SIGNATURE / FIRMA AUTORIZADA

⑈500970468⑈ ⑆062001188⑆ 454 5644 2⑈

**BBVA** Compass    CASHIER'S CHECK / CHEQUE DE CAJA    500970468

Date/Fecha: 01/15/2013        882        $1,215.53

PAY
TO THE     BANK OF AMERICA
ORDER OF
Paguese por este cheque a lo orden de

*** ONE THOUSAND TWO HUNDRED FIFTEEN DOLLARS AND 53 CENTS ***

Remitter/Remitente:    BARRY BRAZIL
Description/Descripción: 172433795

PURCHASER COPY / COPIA DEL COMPRADOR
NON-NEGOTIABLE / NO NEGOCIABLE

AUTHORIZED SIGNATURE / FIRMA AUTORIZADA

# CIVIL CASE INFORMATION SHEET

**434**

CAUSE NUMBER *(FOR CLERK USE ONLY):* 13 DCV 204362    COURT *(FOR CLERK USE ONLY):*

STYLED **ARTHUR B. BRAZIL, II AND LORRAINE S. BRAZIL V. BANK OF AMERICA, N.A.**
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment motion for modification or enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

## 1. Contact information for person completing case information sheet:

| Names of parties in case: | Person or entity completing sheet is: |
|---|---|

**Name:** Ashley Rosenthal

**Email:** ashley.rosenthal@m-hlaw.com

**Address:** 6200 Savoy, Suite 1150

**Telephone:** 713.595.8200

**City/State/Zip:** Houston, Texas 77036-3300

**Fax:** 713.595.8201

**Signature:**

**State Bar No:**

**Plaintiff(s)/Petitioner(s):**
Arthur B. Brazil, III
Lorraine S. Brazil

**Defendant(s)/Respondent(s):**
Bank of America, N.A.

(Attach additional page as necessary to list all parties)

☐ Attorney for Plaintiff/Petitioner
☐ Pro Se Plaintiff/Petitioner
☐ Title IV-D Agency
☒ Other: Paralegal

**Additional Parties in Child Support Case:**

Custodial Parent:

Non-Custodial Parent:

Presumed Father:

## 2. Indicate case type, or identify the most important issue in the case *(select only 1):*

### Civil

**Contract**

*Debt/Contract*
☐ Consumer/DTPA
☐ Debt/Contract
☐ Fraud/Misrepresentation
☐ Other Debt/Contract:

*Foreclosure*
☐ Home Equity—Expedited
☐ Other Foreclosure
☐ Franchise
☐ Insurance
☐ Landlord/Tenant
☐ Non-Competition
☐ Partnership
☐ Other Contract:

**Injury or Damage**
☐ Assault/Battery
☐ Construction
☐ Defamation
*Malpractice*
☐ Accounting
☐ Legal
☐ Medical
☐ Other Professional Liability:
☐ Motor Vehicle Accident
☐ Premises
*Product Liability*
☐ Asbestos/Silica
☐ Other Product Liability List Product:

☐ Other Injury or Damage:

**Real Property**
☐ Eminent Domain/Condemnation
☐ Partition
☐ Quiet Title
☐ Trespass to Try Title
☐ Other Property:

**Related to Criminal Matters**
☐ Expunction
☐ Judgment Nisi
☐ Non-Disclosure
☐ Seizure/Forfeiture
☐ Writ of Habeas Corpus— Pre-indictment
☐ Other:

### Family Law

**Marriage Relationship**
☐ Annulment
☐ Declare Marriage Void
*Divorce*
☐ With Children
☐ No Children

**Other Family Law**
☐ Enforce Foreign Judgment
☐ Habeas Corpus
☐ Name Change
☐ Protective Order
☐ Removal of Disabilities of Minority
☐ Other:

**Post-judgment Actions (non-Title IV-D)**
☐ Enforcement
☐ Modification—Custody
☐ Modification—Other

*Title IV-D*
☐ Enforcement/Modification
☐ Paternity
☐ Reciprocals (UIFSA)
☐ Support Order

**Parent-Child Relationship**
☐ Adoption/Adoption with Termination
☐ Child Protection
☐ Child Support
☐ Custody or Visitation
☐ Gestational Parenting
☐ Grandparent Access
☐ Paternity/Parentage
☐ Termination of Parental Rights
☐ Other Parent-Child:

**Employment**
☐ Discrimination
☐ Retaliation
☐ Termination
☐ Workers' Compensation
☐ Other Employment:

**Other Civil**
☐ Administrative Appeal
☐ Antitrust/Unfair Competition
☐ Code Violations
☐ Foreign Judgment
☐ Intellectual Property

☐ Lawyer Discipline
☐ Perpetuate Testimony
☐ Securities/Stock
☐ Tortious Interference
☐ Other:

**Tax**
☐ Tax Appraisal
☐ Tax Delinquency
☐ Other Tax

### Probate & Mental Health

*Probate/Wills/Intestate Administration*
☐ Dependent Administration
☐ Independent Administration
☐ Other Estate Proceedings

☐ Guardianship—Adult
☐ Guardianship—Minor
☐ Mental Health
☐ Other:

## 3. Indicate procedure or remedy, if applicable *(may select more than 1):*

☐ Appeal from Municipal or Justice Court
☐ Arbitration-related
☐ Attachment
☐ Bill of Review
☐ Certiorari
☐ Class Action

☒ Declaratory Judgment
☐ Garnishment
☐ Interpleader
☐ License
☐ Mandamus
☐ Post-judgment

☐ Prejudgment Remedy
☐ Protective Order
☐ Receiver
☐ Sequestration
☐ Temporary Restraining Order/Injunction
☐ Turnover

**FILED**
FEB 20 2013
AT 4:16 P.M.

Clerk District Court, Fort Bend Co., TX

13-DCV-204362
2010CAIS
Case Information Sheet
2323939

Filed
13 March 20 P2:37
Annie Rebecca Elliott
District Clerk
Fort Bend District

CAUSE NO. 13-DCV-204362

| | | |
|---|---|---|
| ARTHUR B. BRAZIL, II & | § | IN THE DISTRICT COURT OF |
| LORRAINE S. BRAZIL, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| **Defendant.** | § | 434TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Defendant Bank of America, N.A. ("Defendant") files its Original Answer and Affirmative Defenses to Plaintiffs' Original Petition and Request for Disclosures (the "Original Petition") and respectfully shows the Court the following:

## GENERAL DENIAL

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure Defendant generally denies each and every claim, charge, and allegation contained in Plaintiffs' Original Petition, and requests that the Court require Plaintiffs to prove their claims by a preponderance of the credible evidence.

## AFFIRMATIVE DEFENSES

2.      Plaintiffs' claims are barred in whole or in part by their failure to perform their obligations under the promissory note and deed of trust.

3.      Plaintiffs' claims are barred in whole or in part by the economic loss doctrine.

4.      Plaintiffs' claims are barred in whole or in part because Defendant's conduct was not the producing cause of Plaintiffs' alleged losses, damages, and/or injuries.

5.     Plaintiffs lack standing to assert claims under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiffs are not consumers as that term is defined in the DTPA.

6.     Plaintiffs lack standing to assert claims under the Texas Debt Collection Act because Plaintiffs cannot show the indebtedness at issue was acquired for consumer purposes.

7.     Plaintiffs are not entitled to treble or exemplary damages because the sole basis for liability, if any, against Defendant is contractual in nature.

8.     Plaintiffs are not entitled to their attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Bank of America, N.A. respectfully prays that Plaintiffs take nothing by reason of the claims as alleged and for such other and further relief to which this Court deems it to be justly entitled.

Respectfully submitted,

MCGLINCHEY STAFFORD, PLLC

By: /s/ Sharon Sulami
    JOHN L. VERNER
    State Bar No. 20549500
    SHARON SULAMI
    State Bar No. 24083918
    1001 McKinney, Suite 1500
    Houston, Texas 77002
    Telephone (713) 520-1900
    Facsimile (713) 520-1025

*Attorneys for Defendant*
*Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded to the following on this the 20th day of March, 2013.

*Via Facsimile (713) 595-8201*
Robert C. Lane
Anh Thu N. Dinh
Andrew Haut
MIDDAGH & LANE, P.L.L.C.
6200 Savoy, Suite 1150
Houston, Texas 77036

*Attorneys for Plaintiffs*

/s/ Sharon Sulami
SHARON SULAMI